## Ludmer v. Erie Insurance Exchange

*John F. Becker*, for plaintiff.
*H. N. Rosenberg*, for defendant.

WETTICK, *J.*, October 9, 1979—Plaintiff allegedly provided medical services to Joel Ball for injuries sustained in an automobile accident. Plaintiff submitted medical bills in the amount of $2300 for these services to defendant, Erie Insurance Exchange (Erie), which is Mr. Ball's no-fault carrier. Erie refused payment and in this action plaintiff sues to recover his medical fees, interest at the rate of 18 percent and counsel fees.[1] Erie has filed preliminary objections in which it contends that plaintiff's complaint fails to state a cause of action because of the absence of any contractual relationship between plaintiff and Erie.[2]

---

1. Under the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq., overdue payments of no-fault claims bear interest at the rate of 18 percent per annum (§106(a)(2)) and counsel fees may also be awarded if a no-fault claim is denied without reasonable foundation (§107(3)).

2. Under traditional contract principles, a person who is not a party to an agreement cannot enforce the agreement unless it appears from all of the circumstances surrounding the transaction that the promisee sought to exact the promisor's

Plaintiff bases his claim against Erie on the No-fault Act which, according to plaintiff, permits a provider of services to recover against a no-fault carrier the reasonable value of necessary services provided to an accident victim. However, the purpose of the No-fault Act is to establish "a Statewide system of prompt and adequate basic loss benefits for *motor vehicle accident victims and the survivors of deceased victims*" (emphasis supplied) (§102(b)), and nowhere in the No-fault Act does the legislature allow a service provider to enforce a claim against a no-fault carrier for services provided to an accident victim.

Under section 111(b) of the No-fault Act, a no-fault carrier has a duty to "pay or otherwise provide . . . [no-fault] benefits without regard to fault to each individual entitled thereto, pursuant to the terms and conditions of this act;" under section 201 of the No-fault Act, only a victim and any survivor of the deceased victim is entitled to no-fault benefits; and under section 108 of the No-fault Act only victims and survivors of deceased victims may obtain no-fault benefits through the assigned claims plan. Thus the No-fault Act appears to entitle only the victim to make a claim for no-fault benefits against the no-fault carrier.

This court recognizes that under the No-fault Act a provider of services is treated differently from a general creditor of the victim. The no-fault carrier

---

performance for the benefit of this third party. See Murray on Contracts §279 (2d Rev. Ed.). In his complaint, plaintiff neither alleges that he is a third party beneficiary to the insurance agreement between Mr. Ball and Erie nor otherwise bases his claim on the terms and conditions of the insurance agreement. Consequently, plaintiff has not pleaded a cause of action against Erie arising out of the insurance agreement.

may discharge its duties to the victim by making direct payment to the service provider (§106(a)(2)); an assignment by the victim to the no-fault carrier of no-fault benefits is enforceable to the extent that the benefits are for the costs of products, services or accommodations provided or to be provided the victim by the assignee (§106(d)); and a service provider is not precluded from contracting for the right of reimbursement out of the victim's no-fault benefits (§111(a)(3)). However, none of these provisions show a legislative intent to permit a service provider to sue the no-fault carrier of the recipient of the services. In fact, section 106(d) which provides that an assignment by the victim of no-fault benefits is enforceable to the extent that the benefits are for the cost of the product, services or accommodations provided to the assignee, would be unnecessary if the legislature had given a provider of services covered by the No-fault Act the right to sue the no-fault carrier in the absence of an assignment.

To support its claim against Mr. Ball's no-fault carrier, plaintiff cites section 106(f)(1) of the No-fault Act which provides that: "No-fault benefits for allowable expense are exempt from garnishment, attachment, execution, and any other process or claim, except upon the claim of a creditor who has provided products, services, or accommodations to the extent benefits are for allowable expenses for those products, services, or accommodations." However, the purpose of this section is to protect the accident victim's no-fault benefits from the claims of general creditors. The exception merely exempts from the general protection against creditors the service provider who seeks to

enforce a judgment against the victim; it does not permit the service provider to proceed against the no-fault carrier in the absence of a judgment.

This ruling should not seriously hamper a service provider's ability to obtain payment for the no-fault services which it provides. Under the No-fault Act, as we have mentioned, a service provider may either obtain a judgment against the accident victim for the value of the services and institute garnishment proceedings against the no-fault carrier to enforce this judgment or obtain an assignment of the accident victim's claim against the no-fault carrier and institute legal proceedings pursuant to the assignment to enforce this claim.

For these reasons, we enter the following

## ORDER

On this October 9, 1979, it is hereby ordered that defendant's preliminary objections in the nature of a demurrer are sustained. Plaintiff may file an amended complaint within 20 days; if no amended complaint is filed, this action is dismissed.